UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DIARBRO L. WILLIAMS,

        Plaintiff,

v.                          Case No. 20-cv-504-pp

SGT. HESTHEAVEN,
and NURSE MICHELLE,

        Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), GRANTING MOTION TO SCREEN COMPLAINT (DKT. NO. 15), GRANTING MOTION FOR EXPEDITED SCREENING OF COMPLAINT (DKT. NO. 19) AND SCREENING COMPLAINT**

    Plaintiff Diarbro L. Williams, an inmate at Green Bay Correctional Institution who is representing himself, filed a complaint alleging that the defendants violated his civil rights under 42 U.S.C. §1983. Dkt. No. 1. Because it has taken the court some time to screen his complaint, he also has filed two motions asking the court to expedite that process. Dkt. Nos. 15, 19. This order resolves the plaintiff's motion to proceed without prepaying the filing fee and his motions to expedite screening and screens the complaint.

**I.    Motion to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

    The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to let an incarcerated plaintiff proceed with his case without

1

prepaying the filing fee if he meets certain conditions. One of those conditions is that the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b). Generally, once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On March 30, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $0.52 by April 20, 2020. Dkt. No. 6. The court received that fee on April 16, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will allow him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

    A.    Federal Screening Standard

Under the Prison Litigation Reform Act (PLRA), the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case

2

under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. Allegations in the Complaint

The plaintiff alleges that on January 2, 2020, he went to the Racine

3

County Jail for court and was placed in holding cell #1 with two other inmates. Dkt. No. 1 at 3. He says that a guy came into the same holding cell from off the streets and asked Officer Teeling (not a defendant) if he could have a blanket, but she said no. Id. So the guy kicked the cell door and "called her the B word," but the plaintiff says the guy didn't present a threat of immediate harm to himself or to others. Id. The plaintiff says the guy kept talking to Teeling, asking why he couldn't have a blanket, when "out of nowhere Defendant Sgt. Hestheaven sprayed incapacitating agents under the door of the holding cell on all the inmates around 7:48 p.m." Id. The plaintiff says the officer sprayed the inmates for no reason. Id. He says that Teeling, Officer McNeil and Officer Yousdorf (not defendants) came into the holding cell with a taser drawn, while the inmates were choking with their throats and eyes burning from the incapacitating agents. Id. They put each inmate into handcuffs to shower and see the nurse. Id. The plaintiff seems to indicate that the guy who wanted the blanket was fully secured in his cell, was not presenting a threat of harm to himself or others and "was unable to understand and comply with officers order due to his mental illness." Id.

     The plaintiff says that while he was seeing defendant Nurse Michelle, he explained that he had a history of severe headaches and "falling out." Id. at 4. He says that he told Nurse Michelle that the incapacitating agents had triggered his head to hurt really badly and that he was not feeling good. Id. Nurse Michelle told the plaintiff to buy Tylenol off canteen, but he explained

4

that he couldn't because he was only at the jail for court. Id. The plaintiff says he told Nurse Michelle that he came from prison with sumatriptan, a medication that helped with his headaches, and because it was after 8:00 p.m. he asked if he could have some of that to help with the headaches. Id. The plaintiff asserts that Nurse Michelle "just walked off without treating the plaintiff." Id.[1]

The plaintiff seeks $450,000 in compensatory damages and $250,000 in punitive damages. Id.

C.   Analysis

The plaintiff claims that Sgt. Hestheaven and Nurse Michelle violated his Eighth Amendment rights. The Eighth Amendment "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain.'" Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)), including infliction of pain that is "totally without penological justification," Hope v. Pelzer, 536 U.S. 730, 737 (2002); Lisle v. Wellborn, 933 F.3d 705, 716 (7th Cir. 2019).

---

[1] The plaintiff attached several documents relating to his attempts to timely file an inmate grievance about this incident. Dkt. No. 1-1 at 1-7. He also attached summonses, id. at 8-9, which he is not required to do—the court will take care of serving the complaint once it is screened. Finally, he attached requests for production of documents and interrogatories. Id. at 10-22. It is too early in the case for "discovery"—the defendants have not yet been served. When the time comes, the court will issue a scheduling order setting deadlines for completing discovery and for filing motions. At that time, the plaintiff may serve his discovery demands *on the defendants*. He should not file discovery demands with the court.

"Wanton and unnecessary infliction of pain" also includes "grossly inadequate medical care," Pyles, 771 F.3d at 409 (citing Estelle v. Gamble, 429 U.S. 97, 103-04 (1976)). To state an Eighth Amendment claim based on inadequate medical care, the plaintiff must show (1) "that he suffers from an objectively serious medical condition," and (2) that defendants "knew about his condition and the risk it posed, but disregarded that risk." Id. (Citations omitted). "A medical need is sufficiently serious if the plaintiff's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" Roe v. Elyea, 631 F.3d 843 857 (7th Cir. 2011) (quoting Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)). The condition does not need to be life-threatening to be serious; it need only be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010).

A plaintiff must allege "that an official *actually* knew of and disregarded a substantial risk of harm." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (Emphasis in the original). The plaintiff also must show more than "mere negligence." Id. The plaintiff must show that the prison official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment." Stallings v. Liping Zhang, 607 F. Appx. 591, 593 (7th Cir. 2015) (quoting Pyles, 771 F.3d at 409).

6

The plaintiff has stated a claim against both defendants. The plaintiff alleges that by pepper-spraying the entire holding cell for no reason, Sgt. Hestheaven wantonly and unnecessarily inflicted pain on the plaintiff without any penological justification. The plaintiff may proceed on an Eighth Amendment cruel and unusual punishment claim against Hestheavan.

The plaintiff also alleges that the pepper-spray triggered his chronic headaches, and that he had with him medication that helped those headaches. For the purposes of screening, the court assumes that chronic, severe headaches constitute an objectively serious medical condition. The plaintiff alleges that Nurse Michelle knew about the headaches and the fact that the plaintiff had a prescription for them, but deliberately disregarded the pain and the fact that there was a way to treat it. A medical professional's failure to treat a condition can constitute deliberate indifference in violation of the Eighth Amendment. See Gayton, 593 F.3d at 623-624 (reversing summary judgment in favor of a nurse who refused to examine or treat a vomiting inmate). An official's delay of necessary treatment that aggravates a condition or needlessly prolongs a plaintiff's pain can constitute deliberate indifference in violation of the Eighth Amendment. Gomez v. Randle, 680 F.3d 859, 865-66 (7th Cir. 2012). The plaintiff may proceed on an Eighth Amendment deliberate indifference claim against Nurse Michelle.

7

### III. Motions to Expedite Screening (Dkt. Nos. 15, 19)

The plaintiff filed his complaint on March 30, 2020, and it has taken the court seven months to screen it. The court regrets the delay. By this order, it grants the plaintiff's motions for screening, and hopes to get the case back on track.

### IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **GRANTS** the plaintiff's motion to screen the complaint. Dkt. No. 15.

The court **GRANTS** the plaintiff's motion to expedite screening. Dkt. No. 19.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendants Sgt. Hestheaven and Nurse Michelle under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendants Sgt. Hestheaven and Nurse Michelle to file a responsive pleading to the complaint.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the **$349.48** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court will issue a separate order **REFERRING** this case to Magistrate Judge William E. Duffin for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court issues a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to

---

[2] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay

institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner

---

Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Litigants' Common Questions," which contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 2nd day of November, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Court Judge**