UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DIARBRO L. WILLIAMS,

           Plaintiff,

v.                                         Case No. 20-cv-504-pp

SERGEANT HEASTHAVEN,
and NURSE MICHELLE,

           Defendants.

**ORDER DENYING PLAINTIFF'S MOTION TO RECRUIT COUNSEL
(DKT. NO. 50)**

The court has allowed plaintiff Diarbro Williams to proceed on Eighth Amendment claims against two defendants. Dkt. No. 20. He has asked the court to recruit counsel to represent him. Dkt. No. 50. He says that he can't afford an attorney, that his imprisonment "will greatly limit his ability to litigate" the complex issues in the case and that counsel would be better equipped to cross-examine witnesses and collect evidence. Id. at 1–2. He submitted letters from two firms that declined his request to take his case. Dkt. No. 50-1.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to

volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, -___ F.3d ___, 2021 WL 456002 at * 8 (7th Cir. Feb. 9, 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). To satisfy the first element, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 2021 WL 456002 at *8. To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

The lawyers' responses may influence the court's decision to exercise its discretion because they may shed light on whether the plaintiff's attempts to hire counsel were reasonable. Pickett, 930 F.3d at 871. In deciding whether to recruit counsel, the court should consider the reasons the lawyer declined representation, including whether the plaintiff was unwilling (as opposed to unable) to pay a retainer; whether the lawyer lacked time or capacity to take on new clients; or whether the subject matter of the case requires a lawyer who specializes in a specific area of law. Id. The court also should consider how well the plaintiff articulated his case to the prospective lawyer. Id. Where a plaintiff "conveyed his situation well and counsel deemed the claim feeble, then it would be inappropriate for a court to intervene" and recruit counsel. Id. Where a

2
Case 2:20-cv-00504-PP   Filed 03/08/21   Page 2 of 6   Document 52

plaintiff is inarticulate, a court "may have a useful role to play in recruiting counsel." Id.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 2021 WL 456002 at *8. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490–91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The court finds that the plaintiff has demonstrated that he tried to find an attorney on his own before asking for the court's assistance. The first firm declined to take the case because it lacked the resources to do so. Dkt. No. 50-1 at 1–2. The letter explained that the office has only two attorneys, who already had a full caseload. Id. at 1. The second firm declined to take the case because of "lack of time given the numerous other pro bono cases we are currently handling." Id. at 3. Neither firm opined on the merits of the case.

3

Case 2:20-cv-00504-PP   Filed 03/08/21   Page 3 of 6   Document 52

At this stage, however, the plaintiff's filings show he has a clear understanding of the facts and legal issues in the case. The court has no reason to believe that the plaintiff did not prepare the complaint himself. His handwriting is neat and easy to read, and the complaint gave a clear, detailed explanation of the facts and articulated the basis for the plaintiff's claims. It even cited some cases. The plaintiff attached several helpful documents to the complaint. Dkt. No. 1-1.

Since then, he has filed a motion to proceed without prepaying the filing fee (Dkt. No. 2), his prisoner trust account statement (Dkt. No. 3), a declaration in support of the complaint (Dkt. No. 4), a declaration from a witness (Dkt. No. 8) and several letters and motions (Dkt. Nos. 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 23, 30, 31, 32, 35). While a seasoned lawyer would not have filed many of the pleadings the plaintiff has filed, his frequent and lucid filings show that at this stage, he is capable of vigorously representing his position and advocating for himself.

This is the plaintiff's second motion to appoint counsel; he filed the first one on November 10, 2020, just after the court issued its screening order. Dkt. No. 23. Magistrate Judge Duffin denied that motion, explaining the next steps in the lawsuit and concluding that the plaintiff was "clearly capable of communicating his issues and concerns." Dkt. No. 24 at 4. The plaintiff's most recent motion makes no mention of his prior motion or of Judge Duffin's order denying it. He simply asserts that he can't afford a lawyer, that being in prison will make it hard for him to litigate and that a lawyer can cross-examine witnesses. Dkt. No. 50. Most inmates cannot afford lawyers. Prison makes it hard for almost any inmate to litigate. It is easier for a lawyer to cross-examine a witness than for a layperson, but this case has a long way to go before there

are any witnesses to cross-examine. At this point, the defendants are preparing a motion for summary judgment on the ground that the plaintiff did not exhaust his state remedies before filing this lawsuit. Dkt. No. 41. The deadline for the defendants to file that motion is April 21, 2021. Dkt. No. 48. The plaintiff then will have thirty days to oppose the motion—to explain, in writing, why he doesn't agree with it. If the court denies the defendants' motion, the next step will be for the parties to file summary judgment motions on the merits of the plaintiff's claims (if they choose to do so). If the court denies any summary judgment motions filed by the defendants, it then will discuss with the parties possible trial dates—*trial* is the time when witnesses testify and when parties need lawyers to cross-examine those witnesses. That will not be for some time.

The plaintiff also filed an objection to the defendants' motion for an extension of time to file the motion for summary judgment on exhaustion grounds. Dkt. No. 51. The plaintiff asserted that the court should deny the defendants' request because they filed it too late and because he has exhausted his administrative remedies. Id. at 1. The plaintiff attached in support of his objection the grievance and inmate complaint he filed about the issues in this case. Dkt. No. 51-1. Although the court overruled the plaintiff's objection and granted the defendants' motion, the plaintiff's response shows that he understands the issues and how to appropriately oppose a motion. It also shows that the plaintiff knows how to gather and submit the evidence to support his position.

The plaintiff's stated reasons for requesting counsel do not convince the court that counsel is required at this time. The plaintiff makes arguments that nearly every *pro se* plaintiff could make. There are not enough attorneys able

and willing to represent prisoner plaintiffs on a *pro bono* basis to satisfy the demand. At this early stage of the litigation, and given the quality of the plaintiff's filings submitted so far, the court concludes that the plaintiff is able to effectively litigate the case himself.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to recruit counsel to represent him in this matter. Dkt. No. 50.

Dated in Milwaukee, Wisconsin, this 8th day of March, 2021.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**